Good morning, Your Honors. My name is Michael Bongard. I'm appearing on behalf of an appellant respondent in this matter. It's my intent to reserve two minutes for rebuttal. Your Honor, in this case, the District Court's order failed to give deference to trial counsel's Mr. Strickland. The District Court had the benefit of hindsight and based its decisions on subsequent Nevada Supreme Court precedent. Additionally, the court found prejudice despite the strong trial evidence of premeditation and deliberation in this case. I'm going to focus on prejudice regarding trial counsel. My deficient conduct arguments are going to go to both post-conviction counsel and trial counsel. With regards to prejudice, Your Honor, the evidence in this case was that it was the state's intent all along that its primary theory of liability in this case was that this was a willful, premeditated murder. Then why add the felony murder, which the prosecutor clearly identified in the closing statement as an alternative the jury could adopt? You're correct, Your Honor. He did state that it was an alternative theory, but clearly the evidence at trial indicated that Leeds came to the Evensong residence with the intent to kill, that his actions... The jury found Leeds guilty of burglary, so doesn't that suggest that maybe at least one juror found him guilty of murder on the basis of felony murder? They found him guilty of the burglary. Your Honor, though, there was also evidence of intent there in the same, in that they found the defendant guilty of attempted murder of Sally, based upon the fact that there was transferred intent. With regards to the specific evidence of premeditation and deliberation, Leeds makes the comment, after he stabs the victim 31 times, die like the animals you kill. At that point, he then walks to the victim's pickup truck, pulls out a metal jack handle, a two-foot-long metal bar, proceeds to walk back to the victim and hits him in the head eight additional times. There's evidence that that action was, in and of itself, premeditated, because during cross-examination, the prosecutor asked Mr. Leeds about the conversation he had with his friend at the jail, and that Leeds made the comment, there were all kinds of tools and pipes in the back of that truck. I mean, I appreciate your argument there, but we do have a general verdict, correct? That's correct, Your Honor. And that, as Judge Clifton suggested, by his question, we just don't know. I beg to differ on that, Your Honor, because on direct appeal, there was a claim raised challenging that general verdict form. And in an unreasoned decision, the Nevada Supreme Court upheld that. That demonstrates what was... Upheld what? I mean, you can have general verdict forms. Certainly. Did they consider whether part of the form was redundant because it couldn't possibly be anything other than premeditated murder? In which case, you've got to wonder why the prosecutor brought the felony murder. And frankly, I've got to say, and this isn't an issue you need to speak to, but I scratched my head when I heard burglary, because you read the facts. It's like they got this assault, the battery, and so forth, during which it's happening on the driveway, and they kind of fall into the open garage. It's not what you usually think of burglary in terms of breaking and entering to get in to commit the felony. The felony was taking place outside, and then they fell into the garage. So I scratched my head and said, well, gee, it's not really a burglary as I understand it. And so the prosecutor must have been motivated to charge it just because that made it easier to get a first-degree murder conviction on a felony murder theory. And now you're telling us, oh, disregard all that. But how can we disregard what the prosecutor decided to do? Well, Your Honor, I tend to agree with your comment about the prosecutor, you know, adding the charge. However, your comment in and of itself suggests that burglary was such a slight, you know, entry into the garage, where the evidence shows it— The person who knew best decided to bring a burglary charge and bring a felony murder alternative. How can we second-guess that? Your Honor, I think that suggests one of two things, and I'll conclude it with the statement I was making about the Nevada Supreme Court's decision on direct appeal. Number one, again, the district court based its decision on hindsight, citing to a case that was decided six years, or excuse me, eight years after the trial, that said that our burglary statute is subject to one of two reasonable interpretations. You're speaking of White. And then two years later, the same court in Weber decides, yeah, it's ineffective assistance of counsel based on facts that took place long before White. Indeed, I think facts that took place before this case. And so, at least the Nevada Supreme Court is prepared to say it's ineffective assistance of counsel for not bringing the argument that it can't be burglary if it's your own home. And that brings me back to the unreasoned decision on direct appeal in this case. In footnote number one on ER 24, the court denied the claim stating the district court's use of a general verdict form requires a reversal of the first degree murder and attempted murder charges, as it did not reveal whether the jury unanimously found Leeds guilty based on a legally appropriate liability theory. That suggests one of two things, Your Honor. Number one, that the Nevada Supreme Court latched on to the fact that burglary was an inappropriate theory and subsequently found sufficient evidence doing, again, with a harmless error analysis, or that the district court's deficient conduct decision based 100% totally on hindsight, which neither post-conviction counsel nor trial counsel had. And again... Equivalent a little bit with your use of the word hindsight, because in Weber, we have the Nevada Supreme Court saying that, you know, white has articulated the law on burglary, as it always has been in Nevada. So, you know, I'm not sure hindsight really is what's going on here. Well, certainly that white decision wasn't available either to trial or post-conviction counsel at the time they filed their initial pleadings. So what the district court says is clear wasn't necessarily clear to either trial counsel or post-conviction counsel at the time, and yet appellate counsel had the foresight to raise that claim, challenging the theory. And again, post-conviction counsel, when white came out, and I'm at my two minutes, so I'm just going to wrap this up. And when post-conviction counsel had the benefit of white, had that benefit of hindsight, they immediately raised that claim on direct appeal of the denial of the conviction, and the Nevada Supreme Court or the appellate court said, we're not going to address this for the first time on appeal. But that leads to one of two things. Either the hindsight with which the district court looked at everything in this case was not as clear as the district court says it was, or that the Nevada Supreme Court did a prejudice or did a harmless error analysis and found beyond a reasonable doubt that there was sufficient evidence to support the... Either of those come from the statement of the court that it wasn't raised on a timely basis. It's a classic procedural default. But that would come back to the decision on direct appeal, where the court rejected the claim that there was an improper theory, so they either found no deficient conduct or no prejudice. Okay. I'll save the rest of my time for rebuttal. Thank you. All right. Let's hear from the petitioner's counsel. We're not used to petitioner winning below. I got a little confused there. Not used to petitioner being the appellee. Good morning, your honors. May it please the court. My name is Alicia Entriago, and I represent the appellee, Robert Leeds. This court should affirm the lower court's grant of habeas relief for three reasons. First, it has always been the law in the state of Nevada that a person cannot burglarize their own home. Second, this was Mr. Leeds' shared home with his ex-wife, Sally Lane. And third, there was limited, if any, evidence of deliberation presented at trial. And as Judge Hicks and Judge Paez said, we can't be certain what the jury based its verdict on. Let me ask you this, though. Just talking about deficient performance first of trial counsel. So, you know, this is kind of an unfortunate situation. And as Judge Clifton said, the incident happened so they sort of fell into the garage during the struggle, or during the encounter. It seems like, it seems, I don't want to say obvious, but Judge Clifton made a good point, which is, you know, one might question whether or not burglary even applies here. Yet trial counsel, who was defending a death penalty case, the thought didn't even occur to him, apparently. Yes, Your Honor. So does that mean the law, I mean, does that mean that, what are we saying when we say that he should have raised this claim? So trial counsel should have raised this claim for a couple of reasons. The first is that the arguments made in White are not particularly novel. They're based in common law. We've all gone to law school, right? Our understanding of burglary is that it protects against a person's home, like foreign intrusion. Also at night. That is true. And this didn't happen at night. That is absolutely true. And Nevada's legislature has broadened it. So we've moved from the common law, at least some. Some, you are absolutely correct, Your Honor. The point that I was trying to make was that this wasn't particularly novel. I think another important aspect to consider is that Judge Hicks relied upon the Weber decision. And in Weber, Nevada Supreme Court said that direct appeal counsel might have been ineffective for failing to raise this argument on direct appeal for Mr. Weber. That appeal occurred in 2005, before Mr. Leeds' trial. So counsel was making these arguments. I also wanted to— Because the thing that has bothered me the most about your client's argument is what makes this performance deficient? Basically, what the Nevada Supreme Court said in Weber, what Judge Hicks said here, what lots of cases wind up saying, what your argument appears to be, is that there's a winning argument here and it wasn't made. So by definition, that's deficient performance. And I'm not sure that follows. Lawyers aren't all of the same quality. We've been here quite a while. I've had lots of experience with your office. Your office is filled with very good lawyers. I think it's fair to say that the average lawyer in your office is better than the average criminal defense lawyer. The fact that somebody who's a superior lawyer can come up with an argument or realize in this situation, which is a confusing situation, which is, I can understand why you're focusing on the premeditation part, because that appears to be the main thrust of the state's case, and just doesn't focus enough on this piece, which years later, it turns out the Nevada Supreme Court says, yeah, that's a winning argument, something that the court hadn't said before. And you can say, well, it should have been obvious. But what tells us it was—should have been obvious? Or what tells us it was deficient performance? I mean, I practiced law for a long time before getting here. And there were lots of times where suddenly somebody has an insight, and you develop an argument that hadn't been realized before. And I'm not sure in this case that I can fairly say that the trial counsel's performance was deficient in the midst of a first-degree murder defense, not to hit upon this thing focusing on burglary, for the same reason that burglary seems like a sideshow to me here. And yet it's charged, it's convicted, and so forth. But that's just not the focus. So what makes it deficient? Your Honor, I would say that the deficient performance stems from a lack of competence. And I agree with you. Lawyers come in different shapes and sizes. There are better defense attorneys than others. So where is the metric? Where do we say the threshold is? This would have required very minimal research, very limited creative arguments on the part of trial counsel. And I actually want to reference an unpublished Ninth Circuit memorandum that I didn't mention in my brief. It's Urge v. Belak, 290, Federal Appendix 73. And in that case, a panel of the Ninth Circuit said that while trial counsel shouldn't be expected to predict a subsequent state court of appeals decision, where a statute is ambiguous and there are multiple possible interpretations, an attorney should make a challenge based upon those interpretations, especially where the client is going to face additional years of imprisonment. So at least one panel out of the Ninth Circuit has found that where we're talking about an ambiguous statute, multiple interpretations, requires minimal research on the part of an attorney. It's deficient not to make those arguments on behalf of a client. You know, the duties we take as an attorney is to zealously advocate for our clients, right? We also have a— It's dangerously close to saying the lawyer is a guarantor. If there's a winning argument out there, if you don't find it, you're deficient. That's a tough standard. It seems like a lot stricter than Strickland says. Your Honor, respectfully, I wasn't trying to make the suggestion that you have to make every conceivable argument on behalf of a client or that if you don't make a winning argument, that somehow you're deficient. But I think in this instance, your intuition, Judge Clifton, when you were asking my opposing counsel about burglary, hey, like, this just seems commonsensical, right? Why would you add burglary here? It doesn't seem like a burglary, right? And in reality, it's because it wasn't. And I think that, well, you're right, we do need to be careful about what sort of obligations we hold trial attorneys to. I don't think this argument was so novel that it was really something that no defense attorney could think of. In fact, defense attorney was trying to get the burglary as a predicate for felony murder removed right before trial. She filed a petition for writ of mandamus to the Nevada Supreme Court. I mean, she really was doing her best in this situation. But the obvious argument that she could have made and that defense counsel made in White that appellate counsel arguably should have made in Weber was that this argument should have been made by defense attorneys well before it was actually made. Do you want to shift to prejudice? Yes, Your Honor. Thank you. Remain your time. Thank you. So there's something interesting my opposing counsel said about transferred intent. And he's correct that at trial, there was a theory that the attempt to murder of Sally was the transferred intent from the murder or killing of Mr. Scarborough. Transferred intent, though, doesn't require first degree intent. It can amount to second degree. You don't need premeditation and deliberation to have attempt murder. So that is to say that this is simply not a first degree murder case. So there are several things that are relevant here. Under Nevada law, premeditation and deliberation are distinct elements, and opposing counsel seems to conflate those two. Under the relevant decision, Byford v. State, deliberation is a dispassionate weighing of the consequences of one's actions before actually taking those actions. It's not a rash or impulsive decision. Well, he went there the day before he said he was going to come back. He was going to come back on Sunday. He came back on Saturday. Saturday afternoon, just a few hours after the episode where he was escorted away by the police. It's hard not to infer from that the whole point of coming back was to get rid of this new boyfriend. Your Honor, so respectfully, as to the first point, he came back on Friday once he realized that his wife had lied to him about her mother being in town. He realized, I don't have to stay at my office. I can go back home. Only she made it very clear at that point she didn't want him back. I mean, his possessions were taken from room to the porch. He still had boxes in the garage. But I don't think there was a lot of doubt afterwards that she wanted him away. Respectfully, Your Honor, they have been married or together for 27 years. So while it might have been a lost cause, he went back with the intention of trying to show that he was going to make amends. He offered her rent money, right, because he felt like he had been a financial burden to her. He was offering to give her some space. When he returned, he had no idea that Mr. Scarborough was going to be at the house at that point in time. In fact, he was really just trying to talk to Ms. Lane. He had no desire to talk to Mr. Scarborough. So during the course of this attack, which lasted about four minutes, Mr. Leeds didn't have an opportunity to engage in a dispassionate weighing of the consequences. This was essentially a brawl that escalated and turned into a killing. And with that, Your Honor, I've used up all my time. So thank you so much. Respectfully, Mr. Leeds asks that this court affirm the lower court's grant of habeas relief. Thank you. Thank you, counsel. Your Honors, in my remaining time, I'd like to touch on a couple of points my opposing counsel made. You have an absolute extremes, no right to be there, right to be there. There's enough in the gray area that he may not have had that unconditional right to possess. He didn't have a key. Whether he was a resident or an invitee, you know, there's enough gray there that should move us off the absolute that the district court drew. With regards to my opposing counsel's statement that there was a lack of evidence of deliberation and premeditation, I strenuously disagree based on the facts of this case. He came back. He complains that Sally created a ruse, but the ruse was his. He came back. He lied about possessing his most cherished personal possession, his computer. He was on the phone for eight minutes waiting for the perfect opportunity to attack when the victim had his back to him. Can you kind of sum up? Your Honors, again, I think there's enough here wrong with the district court's decisions both on the prejudice and the deficient conduct problem. If you find that there was error in either one, you must reverse. Okay. Thank you, Counsel. We appreciate your arguments this morning and the matter is submitted for decision.
judges: PAEZ, CLIFTON, THOMAS